THE BRANDI LAW FIRM
THOMAS J. BRANDI (CA Bar No. 53208)
CASEY A. KAUFMAN (CA Bar No. 232257)
BRIAN J. MALLOY (CA Bar No. 234882)
JASON B. FRIEDMAN (CA Bar No. 277888)
354 Pine Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 989-1800
Facsimile:  (415) 707-2024
tjb@brandilaw.com
cak@brandilaw.com
bjm@brandilaw.com
jbf@brandilaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA GOODRICH, BRENDAN SCHLENKER GOODRICH, AMY FLYNN on their own behalf and on behalf of all others similarly situated, <br><br>       Plaintiffs, <br><br>       v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AG, <br><br>       Defendants. | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** <br><br> **DEMAND FOR JURY TRIAL** |

## NATURE OF THE CASE

1.      Diesel engines have long been known to provide higher torque than their gasoline counterparts, as well as increased pollution and expense.  Diesel passenger cars were popular in the late 20th century, but they were essentially eliminated from the passenger vehicle market in 2004, when the California

1  Air Resources Board (CARB) implemented rigorous emission standards that basically banned their use.  In

2  the late 2000s, Volkswagen introduced a diesel engine that advertised itself as having the desired power and

3  fuel economy while simultaneously meeting these stringent emission standards.  Volkswagen advertised

4  these models as "clean diesel" vehicles and charged more for this new technology.

5          2.      Unbeknownst to the consumer or any governmental body, these vehicles actually did not

6  meet the CARB emission standards.  Rather, they were equipped with a software "defeat device" that was

7  able to turn the emission controls on or off, depending on whether the vehicle was being driven or

8  undergoing an emissions test.  Per the EPA, "Using a defeat device in cars to evade clean air standards is

9  illegal and a threat to public health."  During the emissions testing, this software fully engaged the vehicle's

10  catalytic converter system that "scrubbed" the engine's exhaust to meet emission standards.  When the car

11  was being driven on the road in normal use, the software intentionally reduced the efficacy of the emission

12  control system, allowing increased pollutants into the air.  Volkswagen's defeat device software caused

13  emissions of up to forty times the legal levels of nitrogen oxide into the atmosphere.  Nitrogen oxide is

14  known to cause significant health problems and environmental harm.

15          3.      Without this software, Volkswagen's "clean diesel vehicles would not have met the emission

16  standards and would not have been sold in the United States.  To date, it appears that over 11 million

17  Volkswagen "clean diesel" vehicles contain the cheating software.

18          4.      EPA and CARB uncovered the defeat device software after independent analysis by

19  researchers at West Virginia University, working with the International Council on Clean Transportation, a

20  non-governmental organization, raised questions about emissions levels, and the agencies began further

21  investigations into the issue. In September, after EPA and CARB demanded an explanation for the

22  identified emission problems, Volkswagen admitted that the cars contained defeat devices.

23          5.      Volkswagen's conduct violates federal law, California's consumer protection statutes and

24  common law, and is a breach of applicable warranties. Plaintiffs bring this suit on behalf of themselves

and proposed nationwide and California classes to obtain damages (both actual and punitive), restitution, and to enjoin Volkswagen from continuing to deceive consumers.

## PARTIES

6.     Plaintiff Tanya Goodrich and her husband Brendan Schlenker Goodrich are citizens and residents of Mountain View, California, located in Santa Clara County.

7.     Plaintiff Amy Flynn is a citizen and resident of the City and County of San Francisco, California.

8.     Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its headquarters and principal place of business in Herndon, Virginia.

9.     Defendant Volkswagen AG is a German corporation and the parent company of Volkswagen Group of America, Inc. Its headquarters and principal place of business are in Wolfsburg, Germany. The two defendants are referred to collectively in this complaint as "Volkswagen."

10.     Volkswagen designs, manufactures, markets, distributes, and warrants vehicles in the United States under the Volkswagen, Audi and Porsche brand names.  Diesel engine vehicle sales account for over 20 percent of Volkswagen's sales.  This case involves upwards of 11 million model year 2009-2015 Volkswagen and Audi brand vehicles ("Defeat Design Vehicles"). All are equipped with a 2.0L diesel engine dubbed by Volkswagen as a "clean diesel" design.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action which Defendants Volkswagen AG and Volkswagen Group of America, Inc. are citizens of different jurisdictions from members of the proposed class, including Plaintiffs Goodrich and Flynn.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

12.     This Court may exercise jurisdiction over Volkswagen because Volkswagen is registered to conduct business in California; has sufficient minimum contacts in California; and intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Volkswagen resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

14.     Assignment is proper to the San Francisco division of this District under Local Rule 3-2(c)-(d), as a substantial part of the events or omissions which give rise to the claim occurred in San Mateo County.

## SUBSTANTIVE ALLEGATIONS

### Volkswagen Clean Diesel Engine Background

15.     The prior generation of diesel engines was commonly associated with emitting gasses and particulates that were damaging to the environment and hazardous to human health.  Diesel was a popular passenger car choice in the 1970-80s, but by the mid-1990s their popularity for passenger car use decreased due to cost and environmental impact.  In the mid-2000s, new emission standards in California and other states decimated the passenger diesel vehicle market because these engines could not reduce exhaust emissions to meet the standards.  These standards included regulation of levels of oxides of nitrogen (NOx).  NOx emission standards were among the most difficult for diesel engines to meet.

16.     Sensing a marketing opportunity, Volkswagen and other manufacturers joined together to research and develop diesel engines for passenger vehicle use that could meet the most stringent United States emission standards.  In the late 2000s Volkswagen advertised that it had developed diesel technology

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

that could reduce diesel engine emissions to meet and, in some cases, exceed modern emission standards. Volkswagen dubbed this new technology as "Clean Diesel" and heavily marketed this new technology to consumers. Specifically, Volkswagen claimed that the new "Clean Diesel" engines provided power and increased fuel economy while meeting all applicable emission standards. The main "Clean Diesel" engine at issue here is the 2.0L TDI (Turbocharged Direct Injection) model. This engine was used across multiple model lines.

17. Volkswagen marketed their new "Clean Diesel" technology by distinguishing it from the prior diesel vehicles of the 20th century. Included in this marketing push across all types of media were claims that Volkswagen "Clean Diesel" customers could now "have it all": a vehicle that had excellent fuel economy and compliance with every U.S. emission standard without compromising the driving experience. For example:

- Volkswagen dubbed its "Clean Diesel" Jetta as the "Official Pace Car of the Environment."

- When hybrid vehicles became increasingly popular, Volkswagen claimed that its TDI engines were certified to meet the same emission standards as the cleanest gasoline-electric hybrids.

- Volkswagen created an advertising campaign which touted the company's commitment to a cleaner environment and stated that their "Clean Diesel" TDI engines were a central to Volkswagen's commitment to being an environmentally conscious company.

- Volkswagen claimed that its "Clean Diesel" technology catered to those who were eco-conscious because the technology delivered a dramatic reduction in exhaust emissions.

18. The new diesel technology reduced several exhaust emissions, but NOx still remained high. NOx is within a group of gases the Environmental Protection Agency (EPA) and others have determined to

create both environmental problems and public health hazards such as smog, ground-level ozone, and acid rain and is a known contributor to global warming.

## Applicable Emissions Regulations

19.     Automobile emissions, including NOx levels, are regulated federally (EPA) and at the California state level as well (CARB).  The federal Clean Air Act prohibits the sale of any vehicle that does not comply with EPA emissions regulations.  42 USC §7522.

20.     EPA regulations established between 2004-2009 for light-duty vehicles (using any type of fuel) fall within Tier 2, which then includes certification levels called bins.  Volkswagen decided to certify its TDI engines, including those within the Defeat Device Vehicles, to Tier 2, Bin 5.  The NOx emission levels for Tier 2 Bin 5 are: .05 g/mi for a vehicle's intermediate life (5 years/50,000 miles) and .07 g/mi for a vehicle's full useful life (10 years/120,000 miles).  40 C.F.R. § 86.1811-04(c).  Further, any manufacturer's fleet average of NOx for any given model year must be under .07 g/mi. *Id.* at § 86.1811-04(d).

21.     In California, CARB has adopted the Low-Emissions Vehicle (LEV) II emission standards which are provided in Cal. Code. Regs. Tit. 13 § 1961 allow for light-duty vehicle NOx emissions of: no more than .05 g/mi initially, and no more than .07 g/mi over their useful life.

22.     There are various methods that automobile manufacturers have employed to reduce NOx levels in exhaust emissions, including routing exhaust gases back to the engine's intake, continual adjustment of engine's air/fuel ratio to reduce NOx emissions, and catalytic systems ("SCR") which use chemical solutions to remove the oxygen from the NOx molecules to form water.

23.     When vehicle manufacturers apply for emission certifications, they are required to list all auxiliary emission control devices in the vehicle, which includes any element of design for the "purpose of

activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. §86.1803-01.

24.     Defeat devices are prohibited.  A defeat device is any item which enables the vehicle's emission system during emissions testing, but then acts to reduce the efficacy of the system during normal operation.  The federal Clean Air Act makes it a violation for any person to sell, manufacture, or install any component in a motor vehicle "where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle . . . in compliance with the regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." Clean Air Act, 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854012(a)(3)(ii).  The EPA has recognized that electronic control systems that can affect the emission system may be defeat devices.

<u>The Volkswagen "Clean Diesel" Defeat Device</u>

25.     A May 2014 study published by the West Virginia University's Center for Alternative Fuels, Engines & Emissions found NOx vehicle emissions from two Volkswagen TDI "Clean Diesel" vehicles to significantly exceed both EPA and CARB maximum levels by 5-35 times.

26.     In response to the WVU study, the EPA and CARB investigated and Volkswagen claimed the results could be from unexpected technical issues or conditions.  Volkswagen voluntarily recalled certain vehicles in December 2014, but later CARB and EPA testing showed that the repaired recalled vehicle still did not comply with EPA or CARB standards.

27.     On September 3, 2015, Volkswagen admitted that the Defeat Design Vehicles included a defeat device to reduce NOx levels during emissions testing.  The device was a portion of software which detected when the vehicle was being tested for emissions standards based on inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure. These

inputs track the parameters of the federal and state procedures used for certification testing. During EPA emission testing, the vehicles' electronic control modules ran a particular calibration called the "dyno calibration" (referring to the equipment used in emissions testing–the dynamometer) that produced compliant emissions results. At all other times during normal vehicle operation, the vehicle software ran a separate "road calibration" that reduced the effectiveness of the lean NOx trap and SCR emission control systems. As a result, emissions of NOx increased by a factor of 10 to 40 times above EPA compliant levels when driven by a consumer.

28.     On September 18, 2015, the EPA and CARB issued notices to Volkswagen directing CARB to immediately initiate discussions to rectify the emission non-compliance and noting that the EPA may seek up to $37,500 for each violation.

29.     In a statement on September 20, 2015, Volkswagen CEO Martin Winterkorn said the company was "deeply sorry that we have broken the trust of our customers and the public." Regarding the allegations by the EPA, a spokesperson for Volkswagen stated: "We have admitted it to the regulator. It is true. We are actively cooperating with the regulator." Volkswagen also announced that it was halting sales of all 2.0L TDI engine vehicles in the United States.  On September 23, 2015, Martin Winterkorn resigned.

## PLAINTIFFS' VOLKSWAGEN PURCHASES

30.     Plaintiffs Tanya Goodrich and Brendan Schlenker Goodrich bought a new 2012 Volkswagen Jetta SportWagen with a 2.0L TDI Engine from Sunnyvale Volkswagen in Sunnyvale California.

31.     Plaintiff Amy Flynn bought a new 2011 Volkswagen Jetta SportWagen with a 2.0L TDI Engine from Serramonte Volkswagen in Colma, California.

32.     Plaintiffs purchased their vehicles in part, because they believed they were fuel efficient and good for the environment. Before purchasing their vehicles, Plaintiff reviewed their product labels and supporting documentation. These materials did not disclose that the vehicles did not comply with

applicable emissions regulations or that Volkswagen had installed a defeat device in their vehicles. They chose to purchase their vehicles instead of competing products, in part, based on these representations. Thus, Plaintiffs reasonably believed at the point of sale that their vehicles complied with applicable emissions standards and did not contain a defeat device.

33.     Had Plaintiffs known that their vehicles did not comply with applicable federal or California emission standards, they would not have purchased their vehicles or would have paid less for them.

## CLASS ACTION ALLEGATIONS

34.     "Defeat Design Vehicles" includes the 2.0L diesel versions of the following vehicles:

- 2009-2015 Volkswagen Jetta (including the Jetta SportWagen);

- 2010-2015 Volkswagen Golf (including the Golf SportWagen);

- 2010-2015 Audi A3;

- 2012-2015 Volkswagen Beetle (including the Beetle Convertible); and

- 2012-2015 Volkswagen Passat.

35.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed classes of persons, initially defined as:

**Nationwide Class:**

All persons who bought or leased a Defeat Design Vehicle in the United States.

**California Class:**

All persons who bought or leased a Defeat Design Vehicle in California.

36.     Excluded from the proposed class is Volkswagen; any affiliate, parent, or subsidiary of Volkswagen; any entity in which Volkswagen has a controlling interest; any officer, director, or employee of Volkswagen; any successor or assign of Volkswagen; and any judge to whom this case is assigned and any member of his or her immediate family.

37.     Numerosity.  Volkswagen has sold hundreds of thousands to millions of Defeat Design Vehicles, such that there are far too many class members to be practically joined in a single action.

38.     Existence and predominance of common questions.  Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members.  These common questions include:

a.     Whether Volkswagen installed a defeat device in Defeat Design Vehicles;

b.     Whether Defeat Design Vehicles fail to comply with the applicable federal and state emissions regulations as a result of the defeat device;

c.     Whether Volkswagen had a duty to disclose the existence of the defeat device and its consequences to its customers;

d.     Whether Volkswagen's marketing of Defeat Design Vehicles was likely to deceive or mislead consumers;

e.     Whether the existence of the defeat device and its consequences would be considered material by an objectively reasonable person;

f.     Whether Volkswagen's conduct violates any applicable warranties; and

g.     Whether Plaintiffs were injured as a result of Volkswagen's conduct.

39.     Typicality.  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

40.     Adequacy.  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

41. <u>Superiority.</u>  The action may be certified under Rule 23(b)(3) because common questions predominate as described above and because a class action is the best available method for the fair and efficient adjudication of this controversy.  This litigation involves technical issues that will require expert testimony and targeted discovery of sophisticated defendants, and could not practically be taken on by individual litigants.  In addition, individual litigation of class members' claims would be impracticable and unduly burdensome to the court system and has the potential to lead to inconsistent results.  A class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

42. In the alternative to class certification under Rule 23(b)(3), the proposed classes may be certified under Rule 23(b)(2) because Volkswagen has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory appropriate with respect to the class as a whole.

## COUNT ONE

### BREACH OF CONTRACT

### (On Behalf of the Nationwide Class)

43. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

44. Plaintiffs bring this Count on behalf of the Class.

45. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat

Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the "Clean Diesel" engine system and the "defeat device." Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

46.     Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with "Clean Diesel" engine systems and "defeat devices."

47.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT TWO

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. §§ 2301 et seq.)

### (On Behalf of the Nationwide Class)

48.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

49.     Plaintiffs bring this class on behalf of themselves and a Nationwide Class, as defined above, against Defendants.

50.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

51.     The Defeat Design Vehicles are "consumer products" under 15 U.S.C. § 2301(1).

52.     Plaintiffs and the members of the putative Class are "consumers" under 15 U.S.C. § 2301(3).

53.     Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. § 2301(4)-(5).

54.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.  Volkswagen provided Plaintiffs and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

55.     By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

56.     Volkswagen has breached these implied warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

57.     In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

58.     Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

59.     As a result of Volkswagen's breach of implied warranties, Plaintiffs and the Nationwide Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

60.     Defendants also provided written warranties as defined by 15 U.S.C. § 2301(6) to purchasers and lessees of Defeat Design Vehicles.

61.     Volkswagen provided Plaintiffs and each member of the Nationwide Class who purchased a new Defeat Design Vehicle with a Manufacturer's Warranty, which provides "bumper-to-bumper" limited express warranty coverage for a minimum of 3 years or 36,000 miles, whichever comes first. This warranty covers emissions related repairs. This warranty is directly applicable to the Defeat Design Vehicles.

62.     Volkswagen also provided a Federal Emissions Warranty to members of the Nationwide Class and a California Emissions Warranty to members of the California Class.  Vehicles certified to meet California emissions standards and registered in states which have adopted those standards are also entitled to coverage under the California Emissions Warranty.

63.     Consistent with federal law, Defendants provided Plaintiffs and the proposed nationwide class with a "performance warranty" and a "design and defect warranty."  These warranties are directly applicable to the Defeat Design Vehicles.

64.     In addition to the Nationwide Class, California Class members were also provided additional warranty coverage beyond that required by federal law.  Under California law, all emissions related performance and parts are covered for 3 years or 50,000 miles (whichever comes first), and a vehicle-specific list of more expensive emissions related parts is covered for 7 years or 70,000 miles (whichever comes first). In addition, the 8-year or 80,000 mile coverage for the catalytic converter, engine control unit, and onboard diagnostic device required by Federal law also applies.  13 Cal. Code. Regs. § 2038; *see* Cal. Health & Safety Code § 43205.

65.     Defendants breached these warranties by selling the Defeat Design Vehicles with a defeat device which reduces the efficacy of the emissions control systems causing the Defeat Design Vehicles to fail to comply with emissions standards set by federal law.  This device cannot be repaired or redressed without materially altering the advertised estimated fuel economy and other performance characteristics of the vehicle.

66.     Volkswagen's breach of warranty has deprived Plaintiffs and other Class members of the benefit of their bargain.  The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

67.     As a direct and proximate result of Defendants' conduct, Plaintiffs and other members of the Nationwide Class have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, that is, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.  Plaintiffs and members of the Nationwide Class are entitled to legal and equitable relief against Defendants, including damages, specific performance, attorney fees, costs, and other relief as appropriate.

### COUNT THREE

### FRAUD BY CONCEALMENT

### (On Behalf of the Nationwide Class)

68.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

69.     Plaintiffs bring this class on behalf of themselves and a proposed Nationwide Class, as defined above, against Defendants.

70.     Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles.  As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

71.     The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually

1
2
3

operating on the road. The result was what Defendant's intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

4
5
6
7
8
9
10

72. Defendants had a duty to disclose these facts because they had exclusive knowledge of the material facts described above and such facts were not known or reasonably knowable by the Plaintiff and proposed class; because it actively concealed these material facts from the Plaintiff and the proposed class; and because it made partial representations regarding the Defeat Design Vehicle's emissions and the vehicles compliance with federal and state law, while at the same time suppressing material facts regarding the vehicle's emission of the pollutant NOx.

11
12
13
14
15
16
17

73. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

18
19
20

74. Defendants actively concealed or suppressed these material facts at least since 2009, in order to profit from the sale of these vehicles and to defraud Plaintiffs and consumers.

21
22
23
24
25
26

75. Plaintiffs and the proposed nationwide class had no knowledge of, and had no reason to know, that Defendants had concealed or suppressed these material facts. In fact, such facts were exclusively known by Defendants. Plaintiffs and the proposed nationwide class would not have purchased the Defeat Design Vehicles, or would have paid substantially less for them, had Defendants not concealed or suppressed these material facts.

27
28

76. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles that are diminished in value as a result of

Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

77. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

78. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

79. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

///

///

///

///

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

## COUNT FOUR

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (CAL. BUS. & PROF. CODE § 17200)

### (On Behalf of the California Class)

80.    Plaintiffs and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

81.    Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class against Defendants.

82.    Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

83.    Defendants' acts and practices constitute unlawful business practices, as discussed elsewhere in this Complaint, in that they:

- knowingly and intentionally concealed from Plaintiffs and the other Class members that the Defeat Device Vehicles suffer from a design defect while obtaining money from Plaintiffs and the Class;

- marketed the Defeat Device Vehicles as functional, defect-free, EPA compliant, and possessing the as-advertised "Clean Diesel" engine performance specifications;

- By purposefully installing an illegal "defeat device" in the Defeat Device Vehicles to fraudulently obtain EPA and CARB certification and cause Defeat Device Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

- By violating section 203(a)(3)(B) of the Clean Air Act (CAA), 42 U.S.C. § 7522(a)(3)(B) and its implementing regulations; section 203(a)(l) of the CAA, 42 U.S.C. § 7522(a)( l ) and its implementing regulations;

- Violating the federal Magnuson-Moss Warranty Act;

- Violating the California's Consumers Legal Remedies Act;

- Violating the California's Song-Beverly Consumer Warranty Act;

- Violating the California law governing vehicle emissions;

- and breaching Volkswagen's warranties.

84.     Volkswagen's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain "Clean Diesel" engine systems that failed to comply with EPA and California emissions standards.

85.     Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

86.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17200.

87.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

///

///

///

///

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

## COUNT FIVE

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### (CAL. BUS. & PROF. CODE §§ 17500, et seq.)

#### (On Behalf of the California Class)

88.     Plaintiffs and the California Class incorporate by reference all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

89.     Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class against Defendants.

90.     California Bus. & Prof. Code § 17500 provides:

> It is unlawful for any...corporation...with intent directly or indirectly to dispose of real or personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

91.     Defendants' misrepresentations and omissions regarding the Defeat Design Vehicle's emissions compliance, its performance, and its fuel efficiency were material and likely to deceive reasonable consumers such as Plaintiffs and the California Class.

92.     Volkswagen knew or should have known these statements were false and misleading and would deceive consumers, including Plaintiffs and the California Class.

93.     Plaintiffs and the California Class have suffered injury-in-fact, including the loss of money and property, as a result of Defendants' misrepresentations and omissions, which are unfair, deceptive, untrue, or misleading in violation of the False Advertising Law. Plaintiff and the California Class would not have purchased or leased the Defeat Design Vehicles had they known of the deceptive nature of

Defendants' misrepresentations and omissions, or they would have paid less for the Defeat Design Vehicles. Also, Plaintiffs and the proposed class will incur additional fuel costs, and a diminution in the performance of their respective Defeat Design Vehicles, if and when their Defeat Design Vehicles are altered in order to bring them into compliance with federal and state emissions standards.

94.   Plaintiffs and the proposed California Class are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their deceptive practices and an order requiring Volkswagen to adequately disclose and repair the defect.

## COUNT SIX

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

### (CAL. CIV. CODE § 1750, et seq.)

### (On Behalf of the California Class)

95.   Plaintiffs and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96.   The Consumer Legal Remedies Act, California Civil Code § 1750, *et seq*., (hereafter "CLRA"), was designed to protect consumer from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices that are specifically prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.  In particular, California Civil Code § 1770(a) provides that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," including:

a.   representing that goods have characteristics, uses, and benefits which they do not have Civil Code § 1770(a)(5);

b.      representing that services are of a particular standard or quality, Civil Code §

1770(a)(7);

c.      advertising services with intent not to sell them as advertised, Civil Code §

1770(a)(9); and

d.      representing that the subject of a transaction has been supplied in accordance with a

previous representation when it has not, Civil Code § 1770(a)(16).

97.   By reason of the acts and practices alleged herein, Defendants have engaged in unfair methods

of competition and unfair or deceptive acts or practices in a transaction intended to result or which results

in the sale of services to any consumer, in violation of Civil Code §§ 1770(a) (5), (7), (9), and (16).

98.   Pursuant to California Civil Code §§ 1780 and 1781, Plaintiff and the Plaintiff Class hereby

request certification of the Plaintiff Class, injunctive relief, restitution and attorneys' fees, costs and

expenses pursuant to California Civil Code § 1780 and California Code of Civil Procedure § 1021.5.

99.   Plaintiffs disclaim any request for monetary relief, including punitive damages, under the

Consumer Legal Remedies Act at this time but reserve the right to seek such relief after providing

Defendants with the notice required by the Act.

## **COUNT SEVEN**

### **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

### **BREACH OF IMPLIED WARRANTY**

### **(CAL. CIV. CODE §§ 1791, et seq.)**

### **(On Behalf of the California Class)**

100.    Plaintiffs and the California Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

101.    Plaintiffs bring this claim on behalf of themselves and the California Class.

102.    Defeat Design Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

103.    Volkswagen is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

104.    Volkswagen impliedly warranted to Plaintiffs and the California Class that Defeat Design Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

105.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

106.    Defeat Design Vehicles would not pass without objection in the automotive trade because the Defeat Design Vehicles do not conform in material respects with federal and California emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx by a factor of 10 to 40 times above the EPA compliant levels.

107.    As described above, the Defeat Design Vehicles are not fit for ordinary purposes for which such goods are used.

108.    Defeat Design Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and California emissions standards or fails to disclose such noncompliance.

109.    Volkswagen's conduct deprived Plaintiffs and the proposed California Class of the benefit of their bargain and have caused Defeat Design Vehicles to be worth less than what Plaintiffs and other proposed California Class members paid.

110.    As a direct and proximate result of Volkswagen's breach of its duties, proposed California Class members received goods whose condition substantially impairs their value. Plaintiffs and the proposed California Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

111.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

112.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and proposed California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defeat Design Vehicles, or the overpayment or diminution in value of their Defeat Design Vehicles, and are also entitled to their attorney fees and costs.

## TOLLING

113.    Any applicable statute of limitations that might otherwise bar any class member's claims is tolled by Volkswagen's knowing and active concealment of the defeat devices Defeat Design Vehicles. Volkswagen kept Plaintiff and the members of the class ignorant of vital information essential to the pursuit of their claims.  Class members could not reasonably have discovered that their vehicles contained defeat devices prior to the EPA's Notice of Violation on September 18, 2015.

//

//

//

//

//

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a.      For an order certifying the proposed classes and Plaintiffs' counsel to represent the classes;

b.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

c.      Injunctive relief in the form of a recall or free replacement program;

d.      For an order awarding Plaintiffs and class members actual, statutory, punitive or any other form of damages provided by statute, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

e.      For an order awarding Plaintiffs and class members restitution, disgorgement or other equitable relief provided by statute or as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

f.      Damages under the Magnuson-Moss Warranty Act;

g.      For treble and/or punitive damages as permitted by applicable laws;

h.      For an order awarding Plaintiffs and the members of the classes pre-judgment and post-judgment interest;

i.      For an order awarding Plaintiffs and the members of the classes reasonable attorney fees and costs of suit, including expert witness fees; and

j.      Such further relief as may be appropriate.


## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Dated:    September 24, 2015                    THE BRANDI LAW FIRM


By:    /s/ Thomas J. Brandi
          THOMAS J. BRANDI
          CASEY A. KAUFMAN
          BRIAN J. MALLOY
          JASON B. FRIEDMAN
          The Brandi Law Firm
          354 Pine Street, Third Floor
          San Francisco, CA 94104
          Telephone: (415) 989-1800
          Facsimile: (415) 989-1801
          tjb@brandilaw.com
          cak@brandilaw.com
          bjm@brandilaw.com
          jbf@brandilaw.com

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION